UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Trevor H.,

    Plaintiff,

v.                                                      Civil Action No. 2:19–cv–236

Commissioner of Social Security,

    Defendant.

**<u>OPINION AND ORDER</u>**
(Docs. 13, 15)

    Plaintiff Trevor H. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 13), and the Commissioner's motion to affirm the same (Doc. 15). For the reasons stated below, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

**<u>Background</u>**

    Plaintiff was 59 years old on his amended alleged disability onset date of June 20, 2013. He has a twelfth grade education and work experience as an embroiderer/packer/re-labeler at the Teddy Bear Factory; a packer at Country Home Products; a coffee-packing machine operator at Green Mountain Roast

Station; a maintenance machine operator at National Chimney; a mechanic at a golf course; and a semiconductor wafer tester. (AR 129–37, 154–55, 330, 344–51.) Plaintiff is divorced and has two adult children. (AR 573.) During the alleged disability period, he mostly lived in an apartment with his girlfriend of approximately four years and was also homeless at times or residing in a motel or campsite. (AR 129, 140, 147–48, 495.)

      Plaintiff suffers from epileptic seizures, attention deficit hyperactivity disorder (ADHD), anxiety, and depression. He also has difficulty concentrating, anger management problems, and symptoms of bipolar disorder. At the June 2016 administrative hearing, Plaintiff testified that he would like to work, but he is unable because he "get[s] too mixed up" and confused, and if things go wrong, he gets anxious. (AR 144.) Regarding his seizures, Plaintiff reported to a consulting psychologist in January 2015 that he has them once or twice a month, and he is "not good" for "a few days" after, feeling "weak" and "kind of . . . ditz[y]." (AR 572.) Sometimes his seizures involve chewing episodes, and other times he stares, wanders around aimlessly, and cannot remember what is happening. (*Id.*; AR 149.)

      Regarding his mental impairments, Plaintiff testified at the administrative hearing that he hates the world; he sometimes becomes angry when the slightest thing goes wrong; he has high anxiety; he throws things; he has mood swings; he speaks before thinking; and he has difficulty remembering things including even simple instructions. (AR 141–43.) Plaintiff further testified that he is "always in a slight depression," although sometimes medication helps to alleviate his symptoms.

(AR 141.)  Plaintiff's girlfriend, Robin Strobridge, testified that Plaintiff's depression typically occurs more than once a month and lasts three to four days at a time.  (AR 150–51.)  Strobridge stated that Plaintiff is "[a]lways" forgetful (AR 151); and he paces around the room due to his anxiety, is "[v]ery easily distracted," gets angry over "silly stuff," and has occasional outbursts where he does things like kick furniture (AR 152).  On a typical day, Plaintiff stays inside and naps, watches television, does a little housework for short periods of time, takes photographs, and sometimes visits with friends and relatives.  (AR 143–44, 355–56, 358.)

In November 2014, Plaintiff filed applications for SSI and DIB, alleging that, starting on February 4, 2014, he has been unable to work due to epileptic seizures, migraines, bipolar disorder, anxiety, and ADHD.  (AR 277–93, 329.)  Plaintiff's application was denied initially and upon reconsideration, and he timely requested an administrative hearing.  The hearing was conducted on June 14, 2016 by Administrative Law Judge (ALJ) Matthew Levin.  (AR 125–58.)  Plaintiff appeared and testified, and was represented by an attorney.  A vocational expert (VE) also testified at the hearing.  On August 4, 2016, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act at any time from his amended alleged disability onset date through the date of the decision.  (AR 109–18.)  Thereafter, the Appeals Council found no basis for changing the ALJ's decision, making it the final decision of the Commissioner.  (AR 1–4.)  Having exhausted his administrative remedies, Plaintiff filed the Complaint in this action on December 17, 2019.  (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at

steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Levin first determined that Plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date of June 20, 2013. (AR 111.) At step two, the ALJ found that Plaintiff's seizure disorder was a severe impairment. (AR 112.) Conversely, the ALJ found that Plaintiff's depression, anxiety, and ADHD were non-severe, meaning they did not "cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (AR 113.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 114.)

Next, the ALJ determined that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional restrictions:

> sitting four hours out of an eight[-]hour day; standing and walking four hours out [of] an eight[-]hour day; occasional overhead reaching; avoidance of all ladders, ropes, [and] scaffolds; occasional postural activities; and . . . avoidance of heights, hazards, driving, temperature extremes, and loud noise.

(AR 114.)  Given this RFC, the ALJ found that Plaintiff was capable of performing his past relevant work as a semiconductor wafer tester, as this work is actually and generally performed.  (AR 117–18.)  The ALJ concluded that Plaintiff had not been under a disability from his amended alleged disability onset date of June 20, 2013 through the date of the decision.  (AR 118.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C.

6

§ 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  The substantial evidence standard is "very deferential," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Nonetheless, in its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff argues that the claim should be remanded for consideration of his mental impairments, as the ALJ should have "made . . . accommodation for the effects of Plaintiff's difficulty with anger and lack of attention." (Doc. 13 at 3.) The Commissioner responds that the ALJ supportably found that Plaintiff's anxiety, depression, and ADHD were not severe impairments; and that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not significantly limit his ability to do work activities. (Doc. 15 at 3.)

It is the claimant's burden to show at step two that he has a "severe impairment," meaning an impairment that "significantly limits [his] physical or

mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010); *see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). An impairment or combination of impairments is "not severe" when medical evidence establishes:

> only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on [a claimant's] ability to work even if the [claimant's] age, education, or work experience were specifically considered (i.e., the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985).

Here, the ALJ explained at step two that, although "[t]here is a question of disability related to depression, anxiety[,] and [ADHD]," "the medical evidence of record does not support that these impairments cause more than slight functional limitations that interfere with [Plaintiff's] ability to perform basic work-related activities." (AR 112.) Citing the relevant evidence, the ALJ supported this step-two finding in consideration of the following factors: Plaintiff's lack of any mental health history prior to 2014; improvement in Plaintiff's mental health symptoms with minimal treatment; no record of counseling; treatment notes recording normal mood, affect, insight, judgment, concentration, and attention span, as well as no signs of depression, anxiety, or psychosis; Plaintiff's ability to perform most activities of daily living on his own; Plaintiff's mere mild limitations in social functioning and ability to concentrate and focus; and the lack of any episodes of

decompensation of extended duration. (AR 112–13 (citing AR 354–61, 445–79, 480–522, 523–71, 585–636, 637–69, 670–701).)

Substantial evidence supports these findings. Specifically, Plaintiff first reported depression at a medical appointment on March 11, 2014, stating that he was having anxious/fearful thoughts, depressed mood, difficulty concentrating, difficulty sleeping, and other symptoms. (AR 490, 495.) At the time, he and his girlfriend were both homeless and jobless. (*Id.*) Plaintiff began seeing psychiatrist Dr. Harris Strokoff about a month later, in April 2014, presenting as having a "very short fuse," inattentiveness, disorganization, hyperactivity, mood swings, and "severe depression with sleep issues," among other things. (AR 561.) Nonetheless, Dr. Strokoff recorded that Plaintiff's orientation and affect were appropriate; his mood was euthymic; his judgment was intact; he was cooperative; his thought processes were logical; his intellect was average; and he did not express suicidal or homicidal ideation. (AR 563.) Dr. Strokoff prescribed medication and recommended therapy. (*Id.*) Within two months (in June 2014), Plaintiff was improving (AR 565–66); and Dr. Strokoff assessed Plaintiff as having a global assessment of functioning (GAF)[1] score of 68 (AR 567), which score is assigned to individuals who demonstrate only "*[s]ome mild symptoms* (e.g., depressed mood and mild insomnia) OR *some difficulty in social [or] occupational . . . functioning . . ., but [who are] generally*

---

[1] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (quoting *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, at 32 (4th ed. 2000)). Of note, in 2013, the American Psychiatric Association published the DSM-V, which "drop[s]" reference to the GAF. *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-V)*, at 16 (5th ed. 2013).

*functioning pretty well*, [and having] some meaningful interpersonal relationships,'" *Zabala v. Astrue*, 595 F.3d 402, 405 n.1 (2d Cir. 2010) (quoting *DSM-IV*, at 34 (4th ed. 2000)) (emphases added). Dr. Strokoff noted that Plaintiff's depression and ADHD were "both signif[icantly] improved," and that no medication changes were indicated or desired. (AR 567.) In December 2014, Plaintiff stated in a Function Report that, although he had "some depression," it was "not severe." (AR 354.) The record supports this proposition, documenting only four additional appointments with Dr. Strokoff—in March 2015, May 2015, July 2015, and June 2016—between June 2014 and the date of the ALJ decision in August 2016. (AR 568, 680, 683, 739.)

Although some of Dr. Strokoff's treatment notes from 2015 record that Plaintiff was depressed and had problems at home, at work, and socially (*see, e.g.*, AR 680, 683); overall, the notes indicate improvement in Plaintiff's mental health symptoms with medication, and unremarkable mental health findings, including among other things normal insight and judgment, no memory loss or forgetfulness, and normal attention span and concentration (*see, e.g.*, AR 565 ("reports ADHD [symptoms] signif[icantly] improved on [medication]"), 566 ("moderate improvement" on medication with no side effects, and normal mental status findings), 569 (normal psychiatric examination findings), 680 ("[Plaintiff] reports ADHD [symptoms] overall stable on [medication]"), 683 ("[Plaintiff] reports depression much improved on [medication], 0/10 depression and anx[iety] [symptoms]")). Other treating providers, including neurologist Dr. Christopher

10

Trevino, who treated Plaintiff's seizures, recorded similar findings regarding Plaintiff's mental health status and improvement with medication. (*See, e.g.*, AR 611 (normal mental status findings), 665 ("reports his mood has improved significantly and he is tolerating [medication] well without side effects").)

Moreover, Dr. Strokoff's treatment notes appear to indicate that Plaintiff's depression was at least partially situational, "aggravated by conflict or stress and social interactions," and that it was Plaintiff's seizures, rather than his depression and other mental impairments, that most limited his ability to work. (AR 683 ("not able to work du[]e to s[eizures]").) Likewise, the January 2015 psychological assessment report of consulting psychologist Raquel Ferns Lefebvre states that, although Plaintiff "presented with depressed affect and was slightly tearful at times," he described his mood as typically "[n]ot too bad I guess, a little depressing" but better when his girlfriend was home. (AR 574.) Plaintiff reported "no problems" with his daily living activities, and demonstrated logical thought processes and no cognitive impairment. (AR 575.) Similarly, as mentioned above, 2015 and 2016 treatment notes from treating neurologist Dr. Trevino indicate that, although Plaintiff reported feeling irritable and anxious, he presented with normal mental health symptoms, including being alert and oriented with normal speech, recall, and ability to follow instructions and perform calculation and repetition tasks. (*See, e.g.*, AR 611, 621, 623, 666, 709.)

Plaintiff claims the ALJ overstated the degree to which Plaintiff improved after 2014, as records from 2015 and 2016 do not show sustained improvement.

11

(Doc. 13 at 4.)  Specifically, while conceding that "the opinions of the two medical consultants in January and February 2015 . . . might possibly show that Plaintiff may not have had a severe mental impairment for a period in 2014 and 2015," Plaintiff argues that "the subsequent records" do not indicate that the condition remained nonsevere.  (*Id.* at 5.)  Plaintiff cites no evidence to support this argument, and the Court finds none in the record.  To the contrary, in the only treatment note from Dr. Strokoff in the year 2016, although the Doctor opined that Plaintiff was "rather impaired due to [a] combination of [chronic epilepsy, depression, and ADHD]"; he did not recommend additional treatment at the time and he recommended a "follow[-]up" appointment as far out as "approx[imately] 4–6 weeks."  (AR 739.)  It would appear Plaintiff's mental health symptoms were not particularly severe as of that date (June 7, 2016) if Dr. Strokoff did not believe follow up, including mental health counseling, was required until over a month later.

Nonetheless, on the same date, June 7, 2016, Dr. Strokoff opined that Plaintiff was "marked[ly]" impaired in his ability to understand, remember, and carry out instructions; make judgments on simple work-related decisions; interact appropriately with supervisors and coworkers; and respond appropriately to usual work situations and to changes in a routine work setting.  (AR 741–42.)  Given the treatment notes and other evidence discussed above, the ALJ supportably found these opinions of Dr. Strokoff "inconsistent and unsupported by the medical

evidence of record."[2]  (AR 112, 116–17.)  The ALJ explained: "Longitudinal treatment notes show that [Plaintiff] presented with symptoms of depression and anxiety in the context of stressors, which included homelessness and no income, but his symptoms appeared [to] improve with minimal treatment."  (AR 112.)  As discussed above, the record supports this analysis.  The ALJ also correctly noted that Plaintiff did not attend counseling to address his mental health issues.  (*Id.*)  *See Santamore v. Colvin*, No. 1:10–cv–242–jgm, 2014 WL 2326123, at \*4 (D. Vt. May 29, 2014) (depression not a severe impairment where lack of evidence of "sustained medical treatment") (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("[ALJ] is entitled to rely not only on what the record says, but also on what it does not say.")).  Furthermore, Plaintiff treated with Dr. Strokoff only six times over the three-year period at issue.  (*See* AR 565, 568, 670, 680, 683, 739.)

Plaintiff contends the ALJ erred in dismissing the opinions of Dr. Strokoff on the grounds that Plaintiff's mental impairments appeared to stabilize with minimal treatment, arguing that "[t]his is not an accurate characterization of the record," and in fact, Dr. Strokoff's treatment notes from May and July 2015 indicate that "Plaintiff's mental conditions were causing significant vocational and social problems" for Plaintiff.  (Doc. 13 at 5 (citing AR 680–83).)  In support of this claim,

---

[2] Under the longstanding "treating physician rule," the opinion of a claimant's treating physician as to the nature and severity of an impairment is given "controlling weight" only so long as it "'is *well-supported* by medically acceptable clinical and laboratory diagnostic techniques and is *not inconsistent* with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (emphases added) (quoting 20 C.F.R. § 404.1527(d)(2)).  Of note, the treating physician rule does not apply to disability applications filed on or after March 27, 2017.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  But Plaintiff's applications were filed before that date (on November 14, 2014), and thus the rule applies.

13

Plaintiff cites a May 22, 2015 record wherein, although Dr. Strokoff documents Plaintiff's reporting of depression, ADHD symptoms, and other mental health problems; he states that Plaintiff reported his ADHD symptoms were "overall stable" on medication (AR 680) and that Plaintiff "has been making good progress toward [the] goal of alleviating depr[ession]" (AR 682). Thus, the ALJ's depiction of the record was accurate. And of course, it was appropriate for the ALJ to consider records indicating that Plaintiff's mental health impairments improved with medication, in analyzing the severity of those impairments. *See Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020) (finding that substantial evidence supported ALJ's determination that plaintiff's bipolar disorder was not a severe impairment in part because it was "adequately controlled with medication"); *Woodmancy v. Colvin*, 577 F. App'x 72, 74 (2d Cir. 2014) (finding that substantial evidence supported ALJ's determination that plaintiff's anemia, sleep apnea, and chronic pancreatitis were not severe impairments in part because plaintiff "benefit[ted] from treatment for th[ese] . . . conditions in ways that minimized their impairing effect").

It was also appropriate for the ALJ to consider Plaintiff's daily activities in deciding whether Plaintiff's mental impairments were severe. *See* 20 C.F.R. § 404.1529(c)(3) (a claimant's "pattern of daily living" is "an important indicator of the intensity and persistence of [the claimant's] symptoms"); *see also* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless

the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."). During the relevant period, Plaintiff was able to attend to his own personal care, prepare his own meals, do household chores including the dishes and laundry, manage his finances, take photographs, and visit with friends and relatives. (AR 143, 355–58.) He was even able to work "performing maintenance, fixing electrical problems, and [doing] construction repair," which involved "climb[ing] ladders and us[ing] power tools." (AR 610.)

Citing to his and his girlfriend's testimony about Plaintiff's "regular problems with anger and concentration," Plaintiff contends that his ability to do minimal activities of daily living "does not undermine the fact that [he had mental health] problems [that had] a real effect on his ability to sustain work." (Doc. 13 at 6.) But the ALJ properly gave little weight to this testimony, explaining that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record" (AR 115); and that Plaintiff's girlfriend "[was] not a disinterested witness whose opinion would not be colored based on her relationship with [Plaintiff]," and that "she is not a trained medical professional" (AR 116). Where, as here, substantial evidence supports it, "an ALJ's credibility determination is generally entitled to deference on appeal." *Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013)); *see Aponte v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including

the claimant." (alteration in original) (internal quotation marks omitted)).  Plaintiff has failed to demonstrate any reason for this Court to set aside the ALJ's assessment of the credibility of Plaintiff's and his girlfriend's statements regarding the severity of Plaintiff's mental impairments.

## Conclusion

Considering the evidence discussed above and the record as a whole, the Court concludes that substantial evidence supports the ALJ's step-two finding that Plaintiff's mental impairments did not significantly affect his ability to perform basic work activity during the alleged disability period.  Accordingly, the Court DENIES Plaintiff's motion (Doc. 13), GRANTS the Commissioner's motion (Doc. 15), and AFFIRMS the decision of the Commissioner.  The Clerk shall enter judgment in favor of the Commissioner.

Dated at Burlington, in the District of Vermont, this 15th day of December 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge